# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 3:16-MJ-271-BH
A black Que cell phone, Model LITE, FCC ID )
2AEI92QUELITE15 )
)

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 30 2016
CLERK, U.S. DISTRICT COURT
By _____ Deputy

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A black Que cell phone, Model LITE, FCC ID 2AEI92QUELITE15, currently in FBI custody

located in the ___Northern___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:

Digitally stored data, to include but not limited to: text messages, photographs, contacts, video recordings, and audio recordings

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Timmy D. Smylie, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 3/30/16

City and state: Dallas, Texas

_____
Judge's signature

United States Magistrate Judge Irma Carrillo Ramirez
Printed name and title

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Timmy D. Smylie, being duly sworn, depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Federal Bureau of Investigation (FBI). I have been so employed for approximately twelve years and am currently assigned to the FBI Field Office in Dallas, Texas, designated to the Fort Worth Resident Agency on a Criminal Enterprise Squad working with a Violent Crime/Gang Task Force (hereinafter referred to as the Task Force). The Task Force is comprised of agents, investigators and police officers from the FBI, the Arlington, Texas Police Department (APD), the Fort Worth, Texas Police Department (FWPD), and the Texas Department of Public Safety (DPS). As a Special Agent, I am charged with the duties of investigating violations of the criminal laws of the United States, to include Title 21, United States Code, Sections 841-963: Drug Offenses.

2. The information set forth in this affidavit is true and correct to the best of my knowledge and was obtained from records, cooperating witnesses, and other law enforcement officers, agents, or analysts. This affidavit does not set forth all of my knowledge about this investigation.

3. I make this affidavit in support of an application for a search warrant for a cellular telephones belonging to Eleuterio Gandarilla (Eleuterio) and Francisco Gandarilla (Francisco) after they were arrested by the FBI on February 10, 2016. The items to be searched are further described in Attachment A.

## **PROBABLE CAUSE**

4. Beginning in September 2013, the Task Force initiated an investigation targeting a number of Dallas/Fort Worth area subjects and their activities to import and distribute methamphetamine and cocaine. The investigation was predicated on information received from other law enforcement agencies, a number of FBI Confidential Human Sources (CHS), and an FBI Undercover Employee (UCE). One of the targets of the investigation is Jose Antonio Valdez-Villalobos (Valdez-Villalobos), who brokers the sale of methamphetamine.

5. On September 24, 2015, CHS 1 met with Valdez-Villalobos to receive a methamphetamine sample. During this meeting, Valdez-Villalobos introduced CHS 1 to his cocaine supplier "El Viejo". CHS 1 later identified El Viejo as Eleuterio Gandarilla (Eleuterio) from a driver's license photo. Eleuterio's son, Francisco Gandarilla (Francisco), with him during this meeting. Valdez-Villalobos told CHS 1 that Francisco is always with Eleuterio. Eleuterio told CHS 1 that he only works on Tuesdays and Wednesdays and quoted a price of $29,500 per kilogram for cocaine. Eleuterio stated that the cocaine would be blocked and stamped. Francisco asked CHS 1 if he changed his telephone number often. CHS 1 replied that he did change his number often to which Francisco replied that was good and that he should keep doing it. Francisco also stated that he never says anything over the phone. CHS 1 told Eleuterio that he had an out of state customer that would want between 5-10 kilograms. Eleuterio said that he would be willing to sell to the out of state customer but would only sell one kilogram the first deal.

**Affidavit in Support of Application for Search Warrant - Page 2 of 8**

After the first deal went well, Eleuterio would be willing to sell multiple kilograms to the out of state customer as long as the money was good.

6.      On October 14, 2015, CHS 1 conducted a controlled buy of one kilogram of cocaine from Eleuterio for $30,000. This purchase took place at Valdez-Villalobos' shop.

7.      After receiving the cocaine from CHS 1, SAs Smylie and Andrew Farrell transported the package to the Dallas FBI Evidence Room. The wrapped kilogram of cocaine was in a tan Kroger grocery bag. While in the presence of Eleuterio, CHS 1 had cut a small "V" shaped opening in the wrapping of the kilogram. It appeared as though the kilogram, which was firmly packed, was wrapped in several layers of tan packing tape, clear tape, and black plastic. SA Smylie cut away the wrapping to expose the cocaine. One side of the kilogram of cocaine was stamped with the capital letters "DOS". The cocaine did field test positive for the presence of cocaine. The cocaine and wrapping material were placed into a heat sealed kpac evidence bag with the appropriate label.

8.      On October 19, 2015, CHS 1 met with Eleuterio and Francisco at Mariscos La Marea Restaurant in Dallas. After meeting inside the restaurant, CHS 1, Eleuterio, and Francisco exited the restaurant and walked toward the rear of the restaurant. Eleuterio was describing how a future CHS 1 purchase would occur in the back parking lot of the restaurant. Eleuterio described how the vehicles of Francisco and CHS 1 would be parked. Eleuterio told CHS 1 that there would only be four people at the deal.

**Affidavit in Support of Application for Search Warrant - Page 3 of 8**

Those four people would be Eleuterio, Francisco, CHS 1 and the UCE. Eleuterio told CHS 1 that he would provide three kilograms at noon and then the two remaining kilograms thirty to forty minutes later. Eleuterio asked CHS 1 if he had vehicles with a hidden compartment. During this meeting, Francisco was also talking and was involved in the discussions. Francisco asked CHS 1 how they knew CHS 1 was not a cop. CHS 1 stated that he had worked with Valdez-Villalobos for over a year and had made multiple purchases of kilogram quantities from him.

9. On November 5, 2015, CHS 1 conducted a controlled buy of one kilogram of methamphetamine from Francisco for $13,500 at Mariscos La Marea. Eleuterio also provided CHS 1 with a sample of beige tinted methamphetamine, which was in a small plastic bag.

10. After receiving the methamphetamine, SA Smylie transported the methamphetamine to the Dallas FBI Evidence Room. The kilogram and the sample both tested positive for the presence of methamphetamine.

11. On January 22, 2016, Eleuterio, Francisco, CHS 1, UCE 1, and UCE 2 met at El Ranchito Restaurant in Dallas. The purpose of this meeting was to negotiate a deal for five kilograms of cocaine and five kilograms of methamphetamine. Eleuterio stated that there would be two different suppliers, one for the cocaine and one for the methamphetamine. Eleuterio said that Francisco would be present at the deal to help count the money. Eleuterio said that he would bring the five kilograms of cocaine to the deal with him.

Once the money for the cocaine was counted, Eleuterio would then go get the five kilograms of methamphetamine. Eleuterio quoted a price of $31,000 per kilogram for the cocaine and $13,000 per kilogram for the methamphetamine. During this meeting, Francisco was actively involved in the discussion about the upcoming deal. Eleuterio wanted CHS 1, UCE 1, and UCE 2 to follow him and Francisco to Mis Consuelos Restaurant in Dallas after leaving El Ranchito. Mis Consuelos is where Eleuterio wanted to do the upcoming deal. Upon arriving at Mis Consuelos, UCE 1 and UCE 2 noticed two cameras overlooking the rear parking lot. Eleuterio said that he knows the owners of the restaurant and that the two cameras don't work.

12. On February 9, 2016, Eleuterio, CHS 1, UCE 1, and UCE 2 met at McDonalds near Loop 12 and Davis in Dallas. The purpose of this meeting was to flash $300,000 to Eleuterio to let him know that CHS 1 had the money for the five kilogram cocaine and five kilogram methamphetamine deal. During this meeting, UCE 3 and UCE 4 were called forward by UCE 1. UCE 3 and UCE 4 arrived at McDonalds and showed Eleuterio the $300,000. UCE 3 and UCE 4 then departed the area. Eleuterio, CHS 1, UCE 1, and UCE 2 then confirmed that the deal would take place the next day. Eleuterio departed the area.

13. On February 10, 2016, Eleuterio was arrested without incident at his residence by the FBI. During this arrest, four cell phones were seized from Eleuterio. A short time later, Francisco arrived at the residence and was arrested without incident by the FBI. During Francisco's arrest, one cell phone was seized from him.

During his post arrest interview, Eleuterio was very reluctant to speak with investigators due to being afraid "people" may try and hurt his family. Eleuterio did state that everything was on him and Francisco had nothing to do with it. During Francisco's post arrest interview, he admitted to attending meetings with Eleuterio where discussions were held about drug deals. Francisco denied ever being a part of a drug deal and that he was not going to be present for any of the deals that Eleuterio set up.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I have learned that individuals involved in drug trafficking and other criminal offenses often use cellular telephones to communicate with one another about the offenses, in planning and preparation for the offenses, and to coordinate with one another in proximity to the time of the offenses.

15. Additionally, based upon my training and experience and that of other law enforcement personnel with whom I have spoken, I have learned that various types of cellular telephone devices, to include "smart phones," are capable of storing vast amounts of information to include, but not limited to, videos, pictures, emails, text messages, internet history, call history and call logs, historical GPS coordinates, notes, contacts, address books, and other information or data. I have also learned that much of this electronic information may be electronically retained in the memory of the device, or otherwise stored or retained in the device, regardless of the user's attempts to delete or remove the information or data.

**Affidavit in Support of Application for Search Warrant - Page 6 of 8**

16. As such, based upon the preceding, I believe that this affidavit provides probable cause to believe that the cellular telephones belonging to Eleuterio and Francisco and described in Attachment A may contain videos, pictures, emails, text messages, internet history, call history and call logs, historical GPS coordinates, notes, contacts, address books, and other information or data, concerning drug trafficking and other criminal activity committed by Eleuterio, Francisco, and others.

17. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. In consideration of the facts presented, I respectfully request that this Court issue a search warrant for the cellular telephones further described in Attachment A of this Affidavit.

Special Agent Timmy D. Smylie
Federal Bureau of Investigation

Sworn and subscribed to me this 30th day of March, 2016 at 11:27 a.m./p.m. in Dallas, Texas.

IRMA CARRILLO RAMIREZ
United States Magistrate Judge

**Affidavit in Support of Application for Search Warrant - Page 7 of 8**

# ATTACHMENT A

## DESCRIPTION OF ITEMS TO BE SEARCHED

1. A black Que cell phone, Model LITE, FCC ID 2AEI92QUELITE15

2. A black HTC cell phone, Model My Touch, FCC ID NM8PD15100

3. A black Alcatel cell phone, Model One Touch, FCC ID RAD483

4. A blue LG cell phone, Model LS665, FCC ID ZNFLS665

5. A black Samsung cell phone, Model Galaxy Note 4, FCC ID A3LSMM910T

Attachment A